UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| JOSEPH HICKS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:17-CV-251-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RICHARD F. SMITH *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Before the Court are Plaintiff Joseph Hicks's *pro se* motion for summary judgment against Equifax (Docket No. 124) and Equifax's cross-motion for summary judgment (DN 126).  Upon review of the motions, responses (DNs 127 and 128), and replies (DNs 129 and 130), the Court will grant Equifax's motion for summary judgment and deny Hicks's motion.

## I. BACKGROUND

Plaintiff Joseph Hicks brought this action against Defendants Equifax Information Services LLC ("Equifax"),[1] alleging negligent and willful violations of the Fair Credit Reporting Act ("FCRA"), the Gramm Leach Bliley Act ("GLBA"), and his right to privacy under Kentucky law. (DN 66)  The following facts are taken from Hicks's unverified second amended complaint and its various attachments (DN 66).[2]

---

[1] Hicks also sued former Equifax CEO Richard Smith, but the claims against Defendant Smith are not before the Court in this Memorandum Opinion and Order.

[2] The second amended complaint contains a one-page affidavit by Hicks (DN 66, p. 8).  That affidavit does not contain facts asserted in the second amended complaint, and in that affidavit, Hicks does not swear to the truth of the facts asserted in the second amended complaint.

During the last week of June 2015, Hicks made an online request to Equifax for his free annual credit report (DN 66, p. 2).[3]  To ascertain his identity, Equifax asked Hicks the following three security questions:  (1) "Who holds your home mortgage, opened in 2013?"; (2) "What is the amount of your monthly mortgage payment?"; and (3) "Who holds your retail credit card opened in 2009?" *Id.*  According to Hicks, however, he "never had a home mortgage, had no loans of any type, and no open credit cards," and "Equifax refused to supply [him] his credit report based on the three above questions." *Id.*

Believing he had a mortgage and retail card account on his credit report as a result of the security questions asked online, Hicks sent a letter on July 1, 2015 to Equifax indicating, "I requested my free annual report online, you not only refused but you claim I opened a home loan in 2013 and a retail card in 2009.  I have no home mortgage and did not open one at any time . . . . I am requesting my credit report immediately." (DN 66-3)[4]  Hicks attached a copy of his driver's license and a copy of his social security card and a "stub" that came along with it that listed his mailing address as P.O. Box 66, Fishersville, KY. (DN 66, p. 2; DN 66-3)

By letter dated July 11, 2015, Equifax advised as follows:

> We received your request for your annual free credit report from Equifax . . . . In order to protect your identity and ensure your privacy, we need some additional information before sending you your report.
>
> Because the information you provided as proof of your identity does not match the information we currently have on your credit file, we ask that you **send us a copy**

---

[3] While he does not allege he sought a free annual credit report in the complaint, he attaches a letter to Equifax indicating that he requested his free annual report at that time (DN 66-3, Ex. A).  Section 1681j provides that "consumer reporting agencies . . . shall make all disclosures *pursuant to section 1681g* of this title once during any 12–month period upon request of the consumer and without charge to the consumer." 15 U.S.C. § 1681j(a)(1)(A) (emphasis added).

[4] Hicks notes at the bottom of his letter, "Attached is a copy of SS Card and Drivers Lic., as you requested" (DN 66-3, Ex. A).  Hicks provides no evidence or even an assertion that Equifax previously requested those documents.

**of two different items – one from each of the two categories listed below**.  One item will verify your identity and the other will verify your current address.

| **Category 1) IDENTIFICATION** | **Category 2) CURRENT ADDRESS** |
|---|---|
| Please make a copy of **one of the following items**. | Please make a copy of **one of the following items**. |
| The item you choose **MUST** contain your complete 9-digit Social Security number. | The item you choose **MUST** contain your current mailing address of PO Box 66, Fisherville, KY 40023-0066 |
| * Pay stub with complete U.S. Social Security number | * Driver's license |
| * W2 form with complete U.S. Social Security number | * Rental/lease agreement or house deed |
| * Valid Social Security Card | * Pay stub with address |
| | * Utility bill (i.e. gas, electric, water, cable, residential telephone bill) with current service address |

**Note**:  A 'work permit only' card is not valid proof of a SSN

To help process your request promptly, please be sure your photocopies are clear and legible. Enlarging any items that contain small print (e.g. driver's license, W2 forms) is helpful.

(DN 66-4, Ex. B).

On July 20, 2015, Hicks sent a second letter to Equifax stating, "You refuse to give me my credit report online, you now have refused to give it to me by letter, and here we will go again this will be my last correspondence other than court action." (DN 66, p. 2, ¶ 3; DN 66-5)  He continued, "You claim I have a home mortgage and a retail card, I do not.  You gave out my credit history to an unauthorized party, and they have apparently opened these accounts."  (DN 66-5)  To the letter, Hicks attached a copy of his driver's license; social security card with the stub listing his P.O. Box 66 address; and an automobile insurance premium notice that listed his mailing address as P.O. Box 66.  *Id.*  In a letter dated July 27, 2015, Equifax provided him with the results of his "reinvestigation request" and advised that "[t]he disputed accounts home mortgage and retail card are currently not reporting on the Equifax credit file." (DN 66-7, Ex. D)  Equifax did not attach a copy of Hicks's credit report. *Id.*

3

Nearly two years later, around February 2017, Hicks applied for a retail credit card from the sporting-goods retailer Cabela's. (DN 66, p. 3)  By letter dated February 19, 2017, Cabela's denied his application, citing "Serious delinquency" and "Too few accounts currently paid as agreed." (DN 66-9)  In reaching its decision, Cabela's indicated that it had obtained Hicks's credit report from Equifax. *Id.*  In its letter to Hicks, Cabela's advised: "You have the right to obtain a free copy of your credit report from the agency, and to dispute the accuracy or completeness of any information the report furnished.  This request must be completed within 60 days of the date of this notice." *Id.*  In May 2017,[5] Hicks sent a letter to Equifax indicating that he was seeking his credit report under 15 U.S.C. § 1681g "for the credit report as it was on Feb. 19th, 2017, which was the only time it was authorized by me to be sent to Cabelas World's Foremost Bank." (DN 66-15)  Equifax responded to Hicks's request by letter dated June 22, 2017, seeking additional information regarding his identity. (DN 66-16)

Meanwhile, Hicks filed a dispute with the Social Security Administration ("SSA") concerning an alleged benefits overpayment. (DN 66, p. 3, ¶ 7)  On April 16, 2017, Hicks received a letter from the SSA, informing him that it had "contacted the credit bureaus and requested that all reference to the SSI overpayment be deleted from your credit report." (DN 66-10)  Thereafter in July 2017, Hicks sent a letter to Equifax advising that "[r]ecently the SSA had an error corrected, and had you delete reference to the S.S. account.  As part the agreement I made with the SSA, I was to receive a copy of the corrected credit report, current issue" and also advising that "I was

---

[5] The exact date of the letter is unknown, but in his letter, Hicks indicates that he is responding to a May 17, 2017, letter sent to him by Mackenzie Cole, a Litigation Paralegal from Equifax (DN 66-14, Ex. P.). Cole directs the letter to Hicks and indicates that it is "[i]n response to your subpoena." *Id.*  In his unverified second amended complaint, however, Hicks asserts that Cole's letter was "unsolicited" (DN 66, p. 3, ¶ 8) ("In May 2017, the Plaintiff received, for some unknown reason, the unsolicited letter (Ex. P)" from Cole "[i]nstructing the lowly Plaintiff on how he could obtain his own credit report from February, 2017 (report dealing with credit denial).").

4

denied credit by Cabelas Worlds Foremost Bank, on or about February 19, 2017, and I would like a copy of that report that you sent to them." (DN 66-18)[6]

Hicks filed this action on April 21, 2017 (DN 1). Equifax filed a partial motion to dismiss Hicks's second amended complaint (DN 67). The Court granted the motion in part and denied it in part, allowing Hicks to proceed with the claims under §§ 1681g(a) and 1681i(a)(6) of the FCRA and dismissing all other claims against Equifax (DN 79). The remaining FCRA claims are the subject of the cross-motions for summary judgment now before the Court.

## II. STANDARD

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). "A 'genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party.'" *Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 444 (6th Cir. 2017) (quoting *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (emphasis in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th

---

[6] In his letter, Hicks noted, "Your great concern over my mailing address of P.O. Box 66, Fisherville, Ky. 40023, is over. I am authorizing you to send these reports to my HOME ADDRESS, which is verified by the attached documents" (DN 66-18, Ex. U). He attached the following documents with his home address on them: his driver's license, vehicle property tax receipt, and U.S. Bank Visa receipt; he also attached a copy of his social security card and Federal Aviation Administration, Commercial Pilot License (DN 66-18, Ex. U). Hicks does not allege that Equifax did not provide him with a copy of his credit report.

Cir. 2014) (citing *Anderson*, 477 U.S. at 255).  However, the Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014).  If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed.  Fed. R. Civ. P. 56(e).  To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of his claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

### III.  DISCUSSION

#### A.  Declaration of Equifax's witness

Equifax supports its motion for summary judgment and opposition to Hicks's motion for summary judgment primarily with a Declaration signed under penalty of perjury by Pamela Smith, a Legal Support Associate for Equifax.  (DN 126-1)  In response to Equifax's motion for summary judgment, Hicks takes issue with Ms. Smith's testimony. (DN 127, p. 2)

Hicks asserts that Ms. Smith was not listed on the Initial Disclosures of Equifax; was not involved in any letter or correspondence; and was not mentioned at any time by defense counsel. *Id.*  He claims, "Then out of nowhere she appears with her claim that [I] failed [my] security test in June of 2015 by answering questions incorrectly.  Apparently Equifax has run out of liars, and is searching for new ones." *Id.*

Equifax, in its reply, argues that Hicks's challenge to Ms. Smith's testimony lacks merit. Equifax indicates that its Initial Disclosure lists "'Celestina Gobin *or other designated representative* of Equifax' as an 'individual likely to have discoverable information . . . that the

6

disclosing party may use to support its claims or defenses.'" (DN 130, p. 11) (ellipsis by Equifax) Equifax states that "the subject of information" was listed as "information regarding the policies, practices and procedures of Equifax for maintaining credit files and reinvestigating consumer disputes, Plaintiff[']s disputes, Equifax's reinvestigations of Plaintiff[']s disputes, the contents of Plaintiff's credit file, and, after reviewing relevant documents, the facts at issue in this case." *Id.* Equifax indicates that Ms. Smith's declaration states that she is authorized to provide this declaration in support of Equifax's Motion for Summary Judgment, (DN 126-1, Decl. ¶ 6), and asserts that her testimony falls within the information listed in the Initial Disclosure (DN 126-1, Decl. ¶¶ 7-25).  Equifax further indicates that Hicks never noticed the deposition of Celestina Gobin or other designated representative of Equifax, nor sought a Rule 30(b)(6) deposition of Equifax. *Id.*

"'Rule 26(a)(1) requires parties to disclose early in discovery persons likely to have discoverable information if the disclosing party may use that information or person to support its claim or defense.'" *PNC Equip. Fin. v. Mariani*, 758 F. App'x 384, 389 (6th Cir. 2018), *reh'g denied* (Jan. 2, 2019) (quoting *Abrams v. Nucor Steel Marion, Inc.*, 694 F. App'x 974, 982 (6th Cir. 2017) (citing Fed. R. Civ. P. 26(a)(1)(A)(i))). "Rule 26(e)(1)(A) imposes a continuing obligation upon a party to 'supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . .'" *Id.* (citing *Emanuel v. Cty. of Wayne*, 652 F. App'x 417, 423 (6th Cir. 2016) (quoting Fed. R. Civ. P. 26(e)(1)(A))).

Under Rule 37(c)(1), "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "'The burden is on the potentially sanctioned party to prove harmlessness.'" *PNC Equip. Fin.*, 758 F. App'x at 389 (quoting *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 272 (6th Cir. 2010)).

In a case with similar circumstances, the Sixth Circuit concluded that the district court did not abuse its discretion by considering the contested affidavit to be harmless. In its decision, the Sixth Circuit explained:

> While PNCEF did not identify Chambers in its Rule 26(a) Initial Disclosures, Carr was not prejudiced. PNCEF's Initial Disclosures identified two vice presidents for PNCEF and stated that they possessed information regarding the terms of the Mortgage Agreement, Carr's guarantees, the subsequent negotiations and forbearance agreements, and the current balance owed to PNCEF. While PNCEF ultimately submitted an affidavit from Chambers—himself a vice president for PNCEF—rather than from either of the individuals identified in the Initial Disclosures, Chambers opined on the *exact same subject matter* as the other individuals would have opined on. Moreover, Chambers exclusively opined on topics listed in the Initial Disclosures. Carr did not suffer prejudice because Chambers happened to sign the affidavit rather than one of the previously-identified corporate representatives. Furthermore, Carr did not serve written discovery on, depose, or otherwise conduct *any discovery* on the two corporate representatives that the Initial Disclosures named. Under these circumstances, Carr did not suffer prejudice from PNCEF's failure to name Chambers in its Initial Disclosures. Because PNCEF's failure to comply with Rule 26(a)(1) was harmless, the district court did not abuse its discretion by considering Chambers' affidavit at summary judgment. *See Abrams*, 694 F. App'x at 982 (identifying a five factor test that Carr cannot survive); Fed. R. Civ. P. 37(c)(1).

*PNC Equip. Fin.*, 758 F. App'x at 390.

Here, Equifax identified "'Celestina Gobin or *other designated representative of Equifax*' as an 'individual likely to have discoverable information'" and specified the subject of that information. Ms. Smith's declaration states that she is authorized to provide the declaration in support of Equifax's Motion for Summary Judgment and asserts that her testimony falls within the information listed in the Initial Disclosure. Equifax further indicates that Hicks never noticed the

deposition of Celestina Gobin or other designated representative of Equifax, nor sought a Rule 30(b)(6) deposition of Equifax.  The Court concludes that Hicks has not been prejudiced by Equifax's failure to identify Ms. Smith in its Initial Disclosures and that Equifax's failure to comply with Rule 26(a)(1) is harmless.  The Court, therefore, will consider Ms. Smith's Declaration on its review of the summary-judgment motions.

### B. FCRA

The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, is designed to protect consumers from inaccurate information in consumer reports by establishing credit reporting procedures which "utilize correct, relevant and up-to-date information in a confidential and responsible manner." *Jones v. Federated Fin. Rsrv. Corp.*, 144 F.3d 961, 965 (6th Cir. 1998) (citation omitted). It imposes civil liability for willful and negligent failure to comply with any of the Act's requirements with respect to any consumer.  *Brown v. Federated Fin. Corp.*, No. 3:05CV-762-H, 2006 WL 2847013, at *1 (W.D. Ky. Sept. 28, 2006) (citing 15 U.S.C. § 1681n (willful noncompliance); § 1681o (negligent noncompliance)).  "The FCRA places distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies."  *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 782 (W.D. Ky. 2003).  It is undisputed that Equifax is a consumer reporting agency.

Section 1681g(a) provides, in pertinent part, that "[e]very consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer . . . . [a]ll information in the consumer's file at the time of the request[.]" 15 U.S.C. § 1681g(a).  Disclosure under § 1681g(a) is "subject to § 1681h(a)(1)," which provides that a "consumer reporting agency shall require, as a condition of making the disclosures required under

9

section 1681g of this title, that the consumer furnish proper identification." 15 U.S.C. §

1681h(a)(1).   Although the statute does not define "proper identification," the regulations

promulgated pursuant to the FCRA provide the following guidance:

> (a) Consumer reporting agencies shall develop and implement reasonable requirements for what information consumers shall provide to constitute proof of identity for purposes of sections 605A, 605B, and 609(a)(1) of the FCRA. In developing these requirements, the consumer reporting agencies must:
>
>> (1) Ensure that the information is sufficient to enable the consumer reporting agency to match consumers with their files; and
>>
>> (2) Adjust the information to be commensurate with an identifiable risk of harm arising from misidentifying the consumer.
>
> (b) Examples of information that might constitute reasonable information requirements for proof of identity are provided for illustrative purposes only, as follows:
>
>> (1) Consumer file match. The identification information of the consumer including his or her full name (first, middle initial, last, suffix), any other or previously used names, current and/or recent full address (street number and name, apt. no., city, state, and zip code), full nine digits of Social Security number, and/or date of birth.
>>
>> (2) Additional proof of identity. Copies of government issued identification documents, utility bills, and/or other methods of authentication of a person's identity which may include, but would not be limited to, answering questions to which only the consumer might be expected to know the answer.

12 C.F.R. § 1022.123.

"A primary purpose[] of the statutory scheme provided by the disclosure in § 1681g(a)(1)

is to allow consumers to identify inaccurate information in their credit files and correct this

information via the grievance procedure established under § 1681i." *Gillespie v. Equifax Info.*

*Servs., L.L.C.*, 484 F.3d 938, 941 (7th Cir. 2007). Section 1681i concerns the proper procedures a

credit reporting agency must take when a consumer disputes a report's accuracy (*i.e.*, a

reinvestigation request). 15 U.S.C. § 1681i.

Against this backdrop, the Court proceeds to the merits of Hicks's claims.

### 1. June 2015 Online Request for Credit Report

Hicks's claims that Equifax's failure to provide him with his online request for his credit report violates § 1681g(a).  He asserts that "Equifax knowingly and willfully lied to [him] concerning the 'security questions', and simply used those questions as a means of preventing [him] from obtaining report." (DN 124, p. 1)

Regarding Hicks's online request, Ms. Smith avers that Hicks's "Equifax credit file history reveals that he did not have a home mortgage, other loan, or open credit card in June 2015." (DN 126-1, Decl. ¶ 13)

> When a consumer makes an online request for an Equifax consumer disclosure, Equifax generally asks the consumer to answer security questions to which only the consumer might be expected to know the answer to verify that the person seeking the consumer disclosure is the consumer that is the subject of the credit file. Typically, Equifax asks security questions concerning accounts opened by the consumer.
>
> [] When a consumer, like Mr. Hicks, has no open accounts Equifax generally asks security questions about non-existing accounts.  When asking questions about non-existing accounts, Equifax always offers an answer option for the consumer to select such as "not applicable" or "none of the above" along with other potential responses.

*Id.* at ¶¶ 14–15.  Smith further avers that "Hicks would have been able to obtain his Equifax consumer disclosure on June 25, 2015, if he had answered the security questions correctly." *Id.* at ¶ 16.  In his unverified response to Equifax's motion for summary judgment, Hicks states

> The three "security questions" asked by Equifax in June of 2015, were answered **TRUTHFULLY** by the Plaintiff.  The Plaintiff knows if he has a mortgage, a mortgage payment or any credit cards. For Ms. Smith to contend that the Plaintiff answered those three questions "incorrectly" is not only absurd, it is a blatant lie. **The TRUTH cannot be called incorrect**.

(DN 127, p. 1, ¶ I) (emphasis by Hicks)

11

Because Hicks does not provide verified evidence that he answered the security questions correctly or at all,[7] he fails to demonstrate that Equifax violated § 1681g in failing to provide him with his credit report.  Equifax, therefore, is entitled to summary judgment with respect to his June 2015 online request for his credit report.

### 2.  July 1st and 20th, 2015, Mail Requests for Credit Report
#### a.  § 1681g(a)

Hicks's asserts that Equifax violated § 1681g(a) in not providing him with his credit report in response to his July 2015 letters. (DN 66, p. 2, ¶ 2; DN 79)  Equifax contends that Hicks's claim under this section fails because Hicks did not provide proper identification.

To his July 1, 2015, letter requesting his credit report, Hicks's submitted a copy of his social security card and a copy of his driver's license. (DN 66-3)  Ms. Smith avers that "[t]he information [Hicks] provided as proof of his identity did not match the information Equifax had on his credit file.  Specifically, the address he provided did not match the address maintained in his Equifax credit file." (DN 126-1, Decl. ¶ 18)

Equifax, therefore, responded on July 11, 2015,  requesting two different forms of identification: (1) a document that verifies the consumer's complete nine-digit social security number as shown on his Equifax file; and (2) a separate document that verifies the consumer's current mailing address as shown on his Equifax file. (DN 66-4; DN 126-1, Decl. ¶ 19)

---

[7] In its reply (DN 130, p. 3), Equifax indicates that Hicks fails to provide an affidavit or declaration in support of his assertion that he answered the three questions truthfully.  Equifax, nevertheless, references an affidavit by Hicks (DN 57) filed prior to the filing of his second amended complaint, wherein Hicks makes one statement concerning his June 2015 online attempt to obtain his consumer disclosure:  "Affiant found impossible to answer 'security questions' posed by Equifax, due to the fact those questions were based on fraudulent accounts, unknown to the Affiant, in June of 2015." *Id.*  This statement does not support Hicks's contention that he *answered* the security questions, correctly or otherwise.

To Hicks's July 20, 2015, letter, he again attached copies of his social security card and driver's license and also provided a copy of an automobile insurance premium notice that listed his mailing address as P.O. Box 66. (DN 66-5)  Ms. Smith advises that "[t]he information [Hicks] provided as proof of his identity did not fulfill the requirements of the documentation requested by Equifax in its July 11, 2015 correspondence to [him]." (DN 126-1, Decl. ¶ 21)  Hicks's social security card was proper identification listed in Category 1 to verify Hicks's identity, but it could also not be a different second item for Category 2.  While Hicks's driver's license was an acceptable item for Category 2, it did not verify the current P.O. Box address maintained in his Equifax credit file.  Finally, although his automobile insurance premium notice contained his current P.O. Box address, it was not listed in Category 2 as an acceptable document to verify an address.  Thus, he failed to submit an acceptable different Category 2 item to verify his address as required by Equifax in accordance with the FCRC and corresponding regulations.

Hicks has failed to prove that he submitted proper identification to Equifax as required by § 1681h(1).  Equifax, therefore, was not required under § 1681g(a) to provide him with a copy of his credit report in response to the July 2015 letters.  Equifax, therefore, is entitled to summary judgment on these claims.

### b.  § 1681i(a)(6)(ii)

Hicks additionally alleges that, with respect to his July 20, 2015, letter, (DN 66, p. 2, ¶ 3; DN 66-5), Equifax violated § 1681i(a)(6)(B)(ii) by failing to provide him his credit report following its reinvestigation regarding the disputed home mortgage and retail credit cards.

Section 1681i(a)(6)(B) provides in pertinent part:

As part of, or in addition to, the notice under subparagraph (A), a consumer reporting agency shall provide to a consumer in writing before the expiration of the 5-day period referred to in subparagraph (A)--

> (i) a statement that the reinvestigation is completed; [and]
>
> (ii) a consumer report that is based upon the consumer's file *as that file is revised as a result of the reinvestigation*[.]

15 U.S.C. § 1681i(a)(6)(B) (emphasis added).

In its prior Memorandum Opinion and Order addressing Equifax's partial motion to dismiss, the Court determined as follows with respect to this claim:

> Equifax maintains that it did not violate § 1681[i](a)(6)(B)(ii) because that provision is triggered only when the file is "*revised* as a result of the reinvestigation." 15 U.S.C. § 1681i(a)(6)(B) (emphasis added). Equifax maintains that no home mortgage or retail credit card ever appeared on Hicks's credit report and thus Equifax never "revised" his file so as to trigger subsection (ii)'s requirement. (D.N. 67, PageID # 530; D.N. 66-7)
>
> The caselaw supports Equifax's position. Although the Sixth Circuit has not addressed the issue, the Eleventh Circuit has held that the purpose of § 1681i(a)(6)(B)(ii) is to "highlight[] the changes made to [the consumer's] file and provide[] a simple method for the [consumer] to determine whether each of [his] contested items has been addressed by [the credit reporting agency]." *See Nunnally v. Equifax Info. Servs., LLC*, 451 F.3d 768, 776 (11th Cir. 2006). The *Nunnally* court concluded that the defendant had "satisfied the 'consumer report' requirement when it informed the [plaintiffs] of the changes it had made to their respective files as a result of the reinvestigation," and that providing the plaintiffs with copies of their complete consumer files was unnecessary. *Id*.; *see also Alston v. Branch Banking & Tr. Co.*, No. GJH-15-3100, 2016 WL 4521651, at *11 (D. Md. Aug. 26, 2016) ("Here, Plaintiff alleges that Experian responded to Plaintiff's . . . dispute letter . . . and 'stated that the [disputed debt] was not changed as a result of the processing of Plaintiff's dispute.' This notification was sufficient for Experian to satisfy its obligation [under § 1681i(a)(6)(B)]." (internal citation omitted)). The Court finds *Nunnally* persuasive, and concludes that the FCRA does not require Equifax to send a full credit file in the absence of a revision.
>
> However, the question before the Court is simply whether Hicks has alleged enough facts to plausibly indicate that Equifax revised his credit file following a request for reinvestigation, thereby triggering § 1681i(a)(6)(B)(ii). *See* [*Ashcroft v.*] *Iqbal*, 556 U.S. [662,] 678 [(2009)]. According to his complaint, Hicks notified Equifax about the disputed home mortgage and retail credit card that allegedly appeared on his consumer report. (D.N. 66, PageID # 447) In response, Equifax informed Hicks that "[t]he disputed accounts home mortgage and retail card are *currently* not reporting on [his] Equifax credit file." (D.N. 66-7 (emphasis added)) Viewed in the light most favorable to Hicks, Equifax's letter does not foreclose the possibility that the disputed accounts previously appeared on Hicks's credit file and that

14

> Equifax revised his file following the reinvestigation. That possibility is especially plausible given the fact that Equifax has presented no explanation for why it allegedly asked Hicks questions regarding a home mortgage and retail credit card during his initial attempt to retrieve his credit report. (*See* D.N. 67; D.N. 74)  The Court will therefore allow Hicks to proceed with his § 1681i(a)(6) claim.

(DN 79, p. 16–17),

As discussed earlier in the instant decision, Equifax explained why it asked Hicks the security questions regarding a home mortgage and retail credit card.  That is, Equifax asked Hicks security questions about non-existent accounts because Hicks had no home mortgage, other loan, or open credit card in June 2015 about which to be asked. (DN 126-1, Decl. ¶¶ 13, 15)  Because he had no mortgage or retail credit cards in June 2015, Equifax did not revise Hicks's credit report as a result of the reinvestigation. (DN 126-1, Decl. ¶ 23)  Absent revision, Equifax was not required to provide Hicks with a copy of his consumer report under § 1681i(a)(6)(B)(ii).   Equifax is, therefore, is entitled to summary judgment on this claim.

### 3.  Request for credit report following February 2017 denial of Cabela's credit card application

Plaintiff alleges that Equifax violated § 1681g by failing to provide him with his February 2017 credit report following Cabela's February 19, 2017, denial of his credit card application. Under § 1681j(b) (titled "Free disclosure after adverse notice to consumer") of the FCRA:

> Each consumer reporting agency that maintains a file on a consumer shall make all disclosures pursuant to section 1681g of this title without charge to the consumer if, **not later than 60 days after receipt by such consumer of a notification** pursuant to section 1681m of this title, or of a notification from a debt collection agency affiliated with that consumer reporting agency stating that the consumer's credit rating may be or has been adversely affected, the consumer makes a request under section 1681g of this title.

15 U.S.C. § 1681j(b) (emphasis added).

In its February 19, 2017, letter denying Hicks's credit card application, Cabela's advised Hicks that he must request a copy of his credit report from Equifax within 60 days of the date of

15

this notice. (DN 66-9) Hicks, however, made no request for his credit report until mid-May 2017, when he sent a letter to Equifax seeking "the credit report as it was on Feb. 19th, 2017." (DN 66-15) Thus, Hicks's request was untimely under § 1681j(b).

Additionally, in Hicks's May and June 2017 letters to Equifax seeking a copy of his credit report, he specifically requested a copy of his February 19, 2017 credit report. (DN 66-15; DN 66-18) However, he was not entitled to the February 2017 credit report because under § 1681g(a) a credit reporting agency must disclose "[a]ll information in the consumer's file *at the time of the request*." 15 U.S.C. § 1681g(a).

For these reasons, Equifax is entitled to judgment as a matter of law on this claim.

#### 4. Request for credit report related to SSA overpayment dispute

Hicks alleges that he was entitled to his credit report under § 1681i(a) after the SSA notified Equifax about the overpayment dispute and Equifax deleted the disputed information from Hicks credit report. As previously indicated, § 1681i pertains to "Reinvestigations of disputed information." Under § 1681i(a)(1),

> Subject to subsection (f) and except as provided in subsection (g), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is **disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation** to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

In this case, Hicks filed a dispute with the SSA. Hicks, the consumer, did not notify Equifax of the dispute regarding the SSA. Further, while Equifax corrected the overpayment error after being notified by the SSA of the error, (DN 66-10), the SSA is not a reseller under FCRA.

16

*See* 15 U.S.C. § 1681a(u).[8]   Therefore, because Equifax was not notified of the social security overpayment dispute by either a consumer or reseller, Equifax was not required to send Hicks a copy of his credit report under § 1681i(a)(6)(b)(ii).[9]   Equifax is entitled to summary judgment on this claim.

### 5.  Claim that Equifax Willfully violated the FCRA

Equifax lastly argues that Hicks has provided no evidence that it intentionally or recklessly violated the FCRA to sustain a willfulness claim under § 1681n of the FCRA.[10]   Hicks alleges that "Equifax was willfully noncompliant on every issue." (DN 66, p. 2, ¶ 4)    In his motion for summary judgment, he asserts that "Equifax knowingly and willfully lied to [him] concerning the 'security questions,' and simply used those questions as means of preventing [him] from obtaining report." (DN 124, p. 1)  He also claims:

> 1681g is most important due to the fact that Equifax just does not care if any credit report is truthful or not, accurate or not, they sell it for profit regardless.  If one cannot view his own credit report under 1681g, that renders 1681i useless and worthless to the citizen, as a protection.

---

[8] Under the FCRA, a reseller is defined as "a consumer reporting agency" that "(1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities" and "(2) does not maintain a database of the assembled or merged information from which new consumer reports are produced." 15 U.S.C. § 1681a(u) (defining "reseller"); *see also* § 1681a(f) (defining "consumer reporting agency").

[9] In his response to Equifax's motion for summary judgment, Hicks asserts a new claim, based on a document obtained during discovery (DN 127, p. 1, Ex. E5 (frozen scan from Equifax)), that Equifax did not resolve the SSA dispute and delete the information from his credit report and that this shows an ongoing violation of § 1681i. *Id.*  This new claim is not properly before this Court.  Nonetheless, as indicated by Equifax, Hicks initiated his dispute with the SSA rather than directly with Equifax as required by § 1681i (DN 130, p. 13).  Equifax goes on to explain that the SSA asked Equifax to delete the account through a Universal Data Form; that when the SSA asked Equifax to delete the SSA account, Equifax suppressed the SSA account so that it would not be viewable to third parties; and that the SSA account remains viewable on the frozen scan. *Id.*

[10] Under 15 U.S.C. § 1681n, in pertinent part, "[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . such amount of punitive damages as the court may allow."

(*Id.*).

A willful violation includes not only intentional violations but also violations committed with reckless disregard of a requirement of the FCRA. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007). Recklessness is measured by an "objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). "[A] company subject to the FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but also shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

The Court concludes, as a matter of law, that Hicks has not offered evidence from which a reasonable jury could conclude that Equifax intentionally or recklessly violated the FCRA or otherwise acted negligently or willfully in requiring him to answer security questions and provide proper documents to verify his identity as required by the FCRA and implementing regulations. Equifax, therefore, is entitled to summary judgment on Hicks's willfulness claims.

## IV.  CONCLUSION

For the reasons discussed above, and the Court being otherwise sufficiently advised, it is

**IT IS HEREBY ORDERED** that Equifax's motion for summary judgment (DN 126) is **GRANTED**, and that Hicks's motion for summary judgment (DN 124) is **DENIED**.

Date: September 30, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc:    Plaintiff, *pro se*
        Counsel of Record
A958.005

18